UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **SUSAN POOLE** | * **CIVIL ACTION NO. 2:14-cv-3420** |
| | * |
| | * |
| **v.** | * **JUDGE MINALDI** |
| | * |
| | * |
| **HOUSING AUTHORITY FOR THE** | * |
| **TOWN OF VINTON ET AL** | * **MAGISTRATE JUDGE KAY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment (Rec. Doc. 21) filed by plaintiff Susan Poole, an Opposition (Rec. Doc. 29) filed by Defendants, and a Reply (Rec. Doc. 33) filed by Poole. For the following reasons, the Motion for Summary Judgment (Rec. Doc. 21) will be **GRANTED IN PART** and **DENIED IN PART**.

## FACTS & PROCEDURAL HISTORY

The Housing Authority for the Town of Vinton ("VHA") is a small housing authority that administers low rent and Section 8 Housing in the town of Vinton, Louisiana.[1] Tenants qualify for public housing on the basis of low income, which is verified initially for qualification.[2] VHA subsequently conducts an annual recertification of its tenants to establish continuing eligibility for the public housing program.[3] Defendant Loretta Dorsey is the Executive Director of VHA, and in this role she interacts with tenants, pays VHA's bills and taxes, arranges housing inspections, handles payroll, and ensures VHA's compliance with federal and state law.[4]

---

[1] Ex. F, Dep. of Loretta Dorsey I (Rec. Doc. 21-8), at 4-5.
[2] Pl.'s Statement of Undisputed Facts (Rec. Doc. 21-16), ¶ 8.
[3] *Id.*
[4] *Id.* ¶¶ 4-5.

Plaintiff Susan Poole, a 58-year-old woman with numerous disabilities, including osteoarthritis and bipolar disorder, has been a tenant in VHA's housing program since 2012.[5] Poole entered into VHA's standard lease agreement, adopted by its board,[6] which states in part:

3.    OCCUPANCY
   A.    **ABILITY TO LIVE INDEPENDENTLY**: If during the term of lease, the resident, for reasons of physical or mental impairment is no longer able to:
      1.    Maintain the apartment in a clean and safe living condition.
      2.    Care for his/her physical needs.
      3.    Not be disruptive, abusive, or otherwise interferes with the quiet enjoyment of other residents.
      4.    Cannot make or refuse arrangements for someone to aid him/her in maintaining the apartment in a clean and safe living condition, and caring for her/his physical needs. **Resident will be evicted by [VHA] if the resident cannot receive this service.**
      5.    A. Resident agrees not to give overnight accommodations to long-term guests in excess of Fourteen (14) days each calendar year or to guests who reside within twenty-five miles without the advance written approval of [VHA].
            B. Resident may have an overnight guest only one (1) night per month. Any requests for more than one (1) night per month must have written approval from [VHA].
            **(INCOMING SPECIAL NEEDS RESIDENT)**
      6.    **Resident agrees not to give overnight accommodations to anyone other than the person(s) assigned to his/her care on a twenty-four hour/seven-day basis.**[7]

Regarding termination, the lease provides that the resident shall be given notice of termination fourteen (14) days prior to termination in cases of failure to pay rent; five (5) days prior to termination in cases of drug-related criminal activity; and thirty (30) days prior to termination in all other cases.[8]

---

[5] *Id.* ¶¶ 1-2, 10.
[6] *Id.* ¶¶ 9-10.
[7] Ex. C, VHA Lease (Rec. Doc. 21-5), ¶ 3 (emphasis in original).
[8] *Id.* ¶ 17.

In late 2013, Poole's osteoarthritis worsened to the point that she required a hip replacement which her doctor, Robert Duarte, MD, scheduled for February 18, 2014.[9] Poole began using a wheelchair in September 2013, and by October 2013 she could no longer get in and out of the shower, use the bathroom, clean her apartment, or get in and out of bed without help.[10] Ken Bielecki, a friend of Poole's, began staying with her in late October 2013 to assist her with the activities of daily living that she was unable to do independently because of her disability.[11] Poole alleges that she understood Section 3 of the lease to mean that if she could not live independently then she could no longer remain in her apartment, so she did not tell VHA that Bielecki was staying with her.[12]

In early November 2013, Dorsey received letters from three of Poole's neighbors alleging that a man was living with Poole.[13] On November 4 and 22, Poole called VHA and left messages for Dorsey, allegedly intending to tell Dorsey that Bielecki was staying with her.[14] Dorsey does not remember receiving voicemails from Poole, but would not dispute that she had.[15] On December 11, 2013, Poole went to VHA's office to conduct her annual recertification.[16] During this process, Dorsey and Poole discussed the issue of Bielecki staying overnight in her apartment.[17] On that same day, Poole completed the paperwork necessary to be recertified as a tenant in public housing during 2014.[18] She also paid her rent for January 2014, which was accepted by VHA.[19]

---

[9] Pl.'s Statement of Undisputed Facts (Rec. Doc. 21-16), ¶ 18.
[10] *Id.* ¶ 19.
[11] *Id.*
[12] *Id.* ¶ 20.
[13] *Id.* ¶ 24.
[14] *Id.* ¶ 21.
[15] *Id.* ¶ 23.
[16] *Id.* ¶ 28.
[17] *Id.*
[18] *Id.* ¶ 29.
[19] *Id.* ¶¶ 29-30.

The following day, Poole contacted Judge Danny Landry, a personal acquaintance, and sought advice on what to do about Bielecki with regard to the terms of the lease.[20] Judge Landry suggested that Poole have Bielecki added to her lease.[21] Poole called Dorsey and they attempted to schedule a time to resolve the issue, but ultimately the two did not meet.[22] After that point, the only contact Dorsey had with Poole was through Judge Landry until a hearing was held on January 8, 2014.[23]

On December 31, 2013, a Notice of Reason to Show Cause Hearing ("Notice") was taped to Poole's door.[24] The Notice stated that VHA "has petitioned the Court and has asked that a hearing be set in the above named Court to show cause why you, the lessee, should not be evicted from the . . . premises" and listed the reasons for the hearing as "VIOLATION OF CONTRACT" and "NON PAYMENT OF RENT."[25] The signatures of both Judge Landry and Dorsey were contained in the Notice.[26] A hearing was held on January 8, 2014, before Judge Landry[27] that resulted in the issuance of a judgment, apparently on that same day, finding in favor of VHA and stating that Poole had "until the 15th of JANUARY, 2014 AT 5:00P.M. to be out of dwelling at which time [Poole] shall turn keys over to landlord therefore returning property back to [VHA.]"[28]

---

[20] *Id.* ¶ 31.
[21] *Id.*
[22] *Id.* at 6-7.
[23] *Id.* ¶ 34.
[24] *Id.* ¶ 35.
[25] Ex. J, Notice of Reason to Show Cause Hearing (Rec. Doc. 21-12).
[26] *Id.*
[27] Pl.'s Statement of Undisputed Facts (Rec. Doc. 21-16), ¶ 44.
[28] Ex. K, J. (Rec. Doc. 21-13).

The night of January 8, 2014, Poole attempted suicide, and she was subsequently hospitalized from January 9 through 17.[29] On learning of Poole's hospitalization, Dorsey called Judge Landry to have the judgment of eviction revised to allow Poole until January 31, 2014, to move out.[30] On January 29, 2014, Dorsey entered into a written agreement with Poole not to execute the judgment of eviction against her, though Poole had to agree to do without overnight assistance.[31] On February 10, 2014, Poole was provided a "live-in aide form," and Bielecki was ultimately approved as a live-in aide on February 13. 2014.[32]

On December 9, 2014, Poole filed a complaint against VHA and against Dorsey individually and in her official capacity seeking declaratory judgment, damages, and injunctive relief.[33] On June 9, 2016, Poole filed the present motion for summary judgment.[34]

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.,* No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

[29] Pl.'s Statement of Undisputed Facts (Rec. Doc. 21-16), ¶ 47.
[30] *Id.* ¶ 48.
[31] *Id.* ¶ 50.
[32] *Id.* ¶ 51.
[33] Compl. (Rec. Doc. 1).
[34] Mot. for Summ. J. (Rec. Doc. 21).

*Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little*, 37 F.3d at 1075).

### VIOLATIONS OF 42 U.S.C. § 1437D(K) & (L)

Poole asserts that Defendants violated § 1437d(k) and (l) of the United States Housing Act ("the Housing Act") by failing to follow pretermination grievance procedures and improperly evicting her. The Housing Act requires that pretermination grievance procedures be instituted[35] under which tenants of public housing will:

> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
>
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l) of this section;
>
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;

---

[35] *See* 24 C.F.R. §§ 966.50-57.

6

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k). Subsection (l) of the same statute provides, in turn, that the lease used by a public housing agency shall require written notice given to a tenant thirty (30) days prior to proposed termination of the lease, except in cases involving non-payment of rent or drug-related criminal activity. *Id.* § 1437d(l).

Section 1983 creates a private right of action against a state actor who deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Generally, § 1983 claims are used to remedy constitutional violations, but the provision also applies to rights created by federal statutes. *Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 609 (5th Cir. 2001). However, "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)).

Courts consider the following factors when determining whether a specific statutory provision creates a federal right enforceable through § 1983:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States [or other state actor].

*Id.* (quoting *Blessing*, 520 U.S. at 340-41).

An analysis of these factors and relevant case law reveals that § 1437d(k) and (l) create enforceable federal rights. First, an examination of the legislative history of § 1437d demonstrates that "Congress clearly intended to require local [public housing authorities] to provide an administrative grievance procedure for tenant complaints of adverse [public housing authority] action, and nothing in the structure or history of the [Housing] Act indicates that Congress intended to foreclose private enforcement of that obligation." *Samuels v. District of Columbia*, 770 F.2d 184, 198 (D.C. Cir. 1985). Second, the language of § 1437d(k) and (l) is unambiguous and can easily be applied by a court. Third, grievance procedure regulation "provides that a decision terminating a grievance proceeding shall in no way affect the rights of a tenant either to seek 'trial *de novo* or judicial review in any judicial proceeding which may thereafter be brought in the matter.'" *Conway v. Hous. Auth. of City of Asheville*, 239 F. Supp. 2d 593, 599 (W.D.N.C. 2002) (citation omitted). Finally, other courts have held that § 1437d is an enforceable federal right. *See, e.g., Conway*, 239 F. Supp. 2d 593. Thus, Poole may use § 1983 to enforce the federal rights created by § 1437d(k) and (l).

VHA argues that there is a factual dispute as to whether Dorsey intended to evict Poole. However, a review of the Notice, signed by both Judge Landry and Dorsey, and the judgment of eviction do not support this argument. The Notice affixed to Poole's door states that VHA petitioned the court for a hearing for her to show cause why she "should not be evicted from the . . . premises" and contains the signatures of both Judge Landry and Dorsey. The hearing was held, and on that same day a judgment of eviction signed by Judge Landry was issued which evicted Poole and required her to leave her dwelling within roughly one week. Frankly, this

evidence is so unequivocal that after-the-fact examinations of the intentions of either Dorsey or Judge Landry are simply irrelevant.

The evidence clearly shows that Poole's lease was terminated in violation of § 1437d(k) and (l). Both parties agree that the Notice affixed to Poole's door on December 31, 2013, was the first written notice issued to Poole. The January 8, 2014, judgment of eviction provides that Poole only had until January 15, 2014, to leave her dwelling, less than the 30 days required by § 1437d(l).[36] Even though the judgment of eviction was later amended, and ultimately never enforced, the issuance of that judgment nonetheless terminated Poole's lease during that time. Moreover, there is no evidence that Poole was afforded the required pretermination grievance procedures, such as being advised of the specific grounds for the threatened eviction, or given the opportunity to examine related documents or records or regulations. Thus, the court finds that Poole's request for summary judgment on her claims under § 1437d(k) and (l) is **GRANTED**.[37]

### VIOLATIONS OF THE FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS

Poole further argues that Defendants violated her Fourteenth Amendment right to due process when: (1) VHA failed to provide basic pretermination administrative protections; (2) Poole failed to receive proper written notice; (3) the written notice she did receive only cited vague reasons for the eviction; and (4) because she was unable to present witnesses. The procedural requirements in the Housing Act are distinct from constitutional due process requirements, and just because VHA violated § 1437d(k) and (l) does not necessarily mean it violated Poole's constitutional rights. The Notice, although deficient with regard to § 1437d(k) and (l), could nonetheless be determined to be sufficient due process under the Fourteenth

---

[36] The requirement is 30 days because the basis of the eviction was neither a drug offense nor failure to pay rent. Although the Notice included non-payment of rent as a cause for the hearing, the parties agree that Poole was not behind on her rent.

[37] The issue of whether Dorsey has qualified immunity was not briefed, and the court declines to make findings as to whether Dorsey is liable in her individual capacity in this ruling.

Amendment. Furthermore, the parties dispute whether Poole was actually prohibited from presenting witnesses during the hearing. Thus, Poole's request for judgment as a matter of law on her constitutional claims is **DENIED**.[38]

### VIOLATIONS OF THE ADA AND THE REHABILITATION ACT

Poole also claims that Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). VHA stipulates that Poole has a qualifying disability, and acknowledges that it is a public entity and receives public funding and is subject to both the ADA and the Rehabilitation Act.[39]

### *Failure to Provide Reasonable Accommodations*

Poole argues that Defendants failed to provide her with reasonable accommodations when it did not allow Bielecki to serve as a live-in aide. To prevail on a failure-to-accommodate claim, a plaintiff must prove: (1) the plaintiff is a 'qualified individual with a disability'; (2) the disability with its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations. *Bernard v.*

---

[38] Because there are genuine issues of material fact that must be resolved with regard to this claim, the court need not address whether Poole had a constitutionally recognized property right that warranted the due process protections of the Fourteenth Amendment.
[39] Memo. in Opp'n (Rec. Doc. 29), at 8.

*EDS Noland Episcopal Day School*, 62 F. Supp. 3d 535, 543 (W.D. La. 2014) (quoting *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)); *see also Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (explaining that the only material difference between Title II of the ADA and § 504 of the Rehabilitation Act lies in their respective causation requirements). "[B]oth the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson*, 431 F.3d at 454. "[T]he court must determine whether the requested accommodation was 'reasonable'-that is, whether it would impose 'undue financial or administrative burdens' or would require a 'fundamental alteration in the nature of the program.'" *Id.* at 455 n.12.

As a public entity, VHA had an affirmative obligation to allow Poole the use of a live-in aide to assist her as needed, an accommodation that is clearly reasonable as it imposed no undue financial or administrative burdens and did not fundamentally alter the nature of the public housing program. However, as Poole acknowledges, there is a genuine dispute as to when Poole notified VHA that she required a live-in aide because of her disability.[40] Thus, Poole's request for judgment as a matter of law on these reasonable accommodations claims under the ADA and the Rehabilitation Act is **DENIED**.

*Discriminatory Provision*

Poole asserts that the lease contains discriminatory provisions that violate the ADA and the Rehabilitation Act. To prevail on a discrimination claim under Title II of the ADA and under the Rehabilitation Act, a plaintiff must prove (1) that she has a qualifying disability; (2) that she is being denied the benefits of services, program, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such

---

[40] *See* Reply (Rec. Doc. 33), at 4.

discrimination is by reason of her disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *see also Frame v. City of Arlington*, 657 F.3d 215, 224 (5th Cir. 2011) ("The ADA and the Rehabilitation Act generally are interpreted *in pari materia*."). As mentioned above, VHA stipulates that Poole has a qualifying disability and that it is a public entity.

Regulations specifying prohibited forms of discrimination provide that "[a] public entity may not . . . utilize criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(ii). "In other words, a public entity cannot actively undercut the ability of a public program to benefit those with disabilities." *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 752 (N.D. Tex. 2014).

Poole asserts that Section 3(A) of her lease contains language that singles out tenants with disabilities for an eviction threat. VHA responds that it is not an assisted living facility, nor is it licensed or equipped to provide assisted living care, and that when read as a whole the lease clearly indicates that VHA is willing to help residents who may need assistance upon request. Section 3 of the lease, located on the second page of an eleven-page document, states:

A. **ABILITY TO LIVE INDEPENDENTLY**: If during the term of lease, the resident, for reasons of physical or mental impairment is no longer able to:
1. Maintain the apartment in a clean and safe living condition.
2. Care for his/her physical needs.
3. Not be disruptive, abusive, or otherwise interferes with the quiet enjoyment of other residents.
4. Cannot make or refuse arrangements for someone to aid him/her in maintaining the apartment in a clean and safe living condition, and caring for her/his physical needs.
**Resident will be evicted by [VHA] if the resident cannot receive this service.**
5. A. Resident agrees not to give overnight accommodations to long-term guests in excess of Fourteen (14) days each calendar year or to guests who reside within twenty-five miles without the advance written approval of [VHA]

B. Resident may have an overnight guest only one (1) night per month. Any requests for more than one (1) night per month must have written approval from [VHA].
**(INCOMING SPECIAL NEEDS RESIDENT)**

6. **Resident agrees not to give overnight accommodations to anyone other than the person(s) assigned to his/her care on a twenty-four hour/seven-day basis.**

Section 19, found on page ten of the lease, provides that "a handicapped person shall be provided reasonable accommodations to the extent necessary to provide the handicapped person with an opportunity to use and occupy the dwelling unit equal to a non-handicapped person."

The language in Section 3(A) is ambiguous and does not afford disabled persons who, due to their disabilities, require live-in aides or other significant assistance with an adequate understanding of their rights under federal law. The relationship between the requirements in Section 3(A)(1) and (2) and the allowance in Section (A)(4) for someone to aid in maintaining the apartment and caring for the tenant's physical needs is unclear. This creates the unacceptable outcome that a disabled person who requires assistance due to a disability may fear eviction, as did Poole. Section 19, located multiple pages away and using generic language, does not remedy this deficiency.

The court realizes that the lease is a standard lease provided by the Louisiana Housing Council and finds no indication of a purposeful attempt to mislead or not inform disabled persons of their rights. Nonetheless, as this case demonstrates, the lease has the effect of substantially impairing the ability of disabled persons who are in need of public housing to gain and maintain access to public housing by obfuscating the requirements of tenancy relating to independence and failing to clearly explain disabled persons' rights to necessary assistance. Poole hesitated to give notice to VHA of her need for Bielecki's assistance out of fear that she would be evicted for being unable to maintain her apartment and care for her physical needs. This entire situation may have been avoided if the language in Section 3(A) had been clear

13

enough to make Poole aware that she had the right to a full time live-in aide and was not at risk of eviction. Thus, the court concludes that the ambiguity in Section 3(A) violates federal law.

### Denial of Meaningful Access

Evaluation of meaningful access claims are necessarily fact-specific. *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008). Given the facts of this case, this claim would be better resolved by a factfinder. Thus, Poole's request for judgment as a matter of law on this issue is **DENIED**.

### VIOLATION OF THE FAIR HOUSING ACT

Poole alleges that Defendants violated the Fair Housing Act by failing to allow Poole reasonable accommodations for her disability. The Fair Housing Act provides that it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling" to any renter because of the renter's handicap. 42 U.S.C. § 3604(f)(1)(A). "Handicap" is defined in the terms used to define "disability" in the ADA. 42 U.S.C. § 3602(h). For the purposes of the Fair Housing Act, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a person with a disability] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Fair Housing Act's reasonable accommodation provision may be interpreted using the same principles applied under the ADA and the Rehabilitation Act. *See Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000). As discussed above, there is a genuine dispute as to when Poole notified VHA that she required a live-in aide because of her disability. Thus, Poole's request for judgment as a matter of law on her reasonable accommodations claims under the Fair Housing Act is **DENIED**.

14

INJUNCTIVE RELIEF

Poole seeks the following injunctive relief: (1) a court order requiring that a coordinator trained in the housing-related rights of individuals with disabilities instruct VHA on how to appropriately accommodate individuals with disabilities; (2) revision of VHA's form lease to remove the provision that threatens people with disabilities with eviction, and replace it with a clause that accurately describes their rights and responsibilities; and (3) a court order requiring that VHA offer Poole reasonable accommodations and her rights of grievance and other lease protections found in the Housing Act. For the court to grant the requested injunctive relief, Poole must prove:

> (1) she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Poole is unable to establish that she has suffered an irreparable injury. The judgment of eviction and the events leading up to that judgment violated the Housing Act. However, it does not escape the court that Poole was ultimately allowed to continue residing in her dwelling. Moreover, Poole does not allege any threats or retaliatory acts by Dorsey or VHA. While the court is sympathetic to Poole's situation and her dependency on housing through VHA, there has been no irreparable injury, and there is no evidence of an imminent threat of irreparable injury

sufficient to warrant the requested injunctive relief. Accordingly, Poole's request for injunctive relief is **DENIED**.[41]

      Lake Charles, Louisiana, this ____ day of _____, 2016.

PATRICIA MINALDI<br>
UNITED STATES DISTRICT JUDGE

---

[41] Nonetheless, the court is confident that VHA appreciates that the language in Section 3(A) of the lease has been determined to be too ambiguous, and that revising this language is a relatively simple task that may shield it from liability in the future.

16